# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | | |
|---|---|---|
| John C. Carrington and Deborah T. Carrington, | ) ) ) | Civil Action No. 5:13-03422-JMC |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| Steven T. Mnuchin, IMB HoldCo, LLC, and OneWest Bank, FSB, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Plaintiffs John C. Carrington and Deborah T. Carrington (collectively "Plaintiffs") filed this action seeking damages from Defendants IMB HoldCo, LLC ("IMB"), OneWest Bank, FSB ("OneWest"), and Steven T. Mnuchin[1] ("Mnuchin") (collectively "Defendants") for their alleged failure to properly pay Plaintiffs' property taxes out of amounts held in escrow and to adequately evaluate Plaintiffs for a loan modification under the Home Affordable Modification Program ("HAMP"), 12 U.S.C. §§ 5219, 5219a, 1715z–23.  (ECF Nos. 1, 16.)  Plaintiffs assert a federal law claim against Defendants for violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601–2617, and state law claims for breach of contract and a cause of action that Defendants construe as either a claim for fraud or for breach of contract accompanied

---

[1] Mnuchin is allegedly the CEO of IMB.  (ECF No. 16 at 9 ¶ 35.)  IMB and OneWest assert that Mnuchin has not appeared in this matter because he has neither been properly served nor waived service.  (See ECF No. 20 at 1 ("Steven T. Mnuchin has not been served in this action."); ECF No. 22-1 at 2 n.1.)  Upon review, the court finds that there is not any evidence in the record that Mnuchin has been properly served.  Because more than one hundred and twenty (120) days have passed since the amended complaint was filed on February 28, 2014, the court in its discretion dismisses the action against Mnuchin pursuant to Fed. R. Civ. P. 4(m).  Id. ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

by a fraudulent act.[2]  (Id.)

This matter is before the court pursuant to motions by IMB and by OneWest to dismiss the amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (the "Rule 12(b)(6) motion").  (ECF Nos. 22, 23.)  In addition, IMB moves the court to dismiss the action against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2) motion").  (ECF No. 22.)  Plaintiffs did not file a response in opposition to the pending motions to dismiss.[3]  For the reasons set forth below, the court **GRANTS** IMB's Rule 12(b)(2) motion, **DENIES AS MOOT** IMB's Rule 12(b)(6) motion, and **GRANTS** OneWest's Rule 12(b)(6) motion.

## I.    RELEVANT BACKGROUND TO PENDING MOTION

The following relevant facts from the amended complaint are taken as true only for the purposes of the pending motions.  This action arises from a course of events that allegedly resulted in Plaintiffs almost losing their ownership interest in property located in Orangeburg County, South Carolina (the "Property").  On or about March 13, 2006, Plaintiffs executed a note and mortgage (the "Mortgage") on the Property in favor of IndyMac Bank, F.S.B.  (ECF No. 22-

---

[2] Plaintiffs' third cause of action appears to state either a claim for breach of contract accompanied by a fraudulent act or a claim for fraud.  (See ECF No. 16 at 22 ¶ 127–23 ¶ 129(c).)  Specifically, Plaintiffs first allege that Defendants deliberately, wantonly, and intentionally breached the Mortgage, and then set forth what Plaintiffs contend are three "deliberate acts of Fraud" committed by Defendants.  (Id.)

[3] The court notes that Plaintiffs' counsel submitted an affidavit wherein he stated that he could not file a response to the motions to dismiss "because of demands related to my 20-year old daughter's health condition."  (ECF No. 37-1 at 1 ¶ 4.)  He further asked the court to "refrain [from] penalizing my clients for my conduct."  (Id. at 2 ¶ 8.)  However, three (3) months after the affidavit was filed, Plaintiffs' counsel has not sought leave to file a response to the motions to dismiss even after saying that "[a] portion of Plaintiffs['] Response to the motions to dismiss has been prepared and will be available for presentation or filing within the next two days."  (Id. at 2 ¶ 7.)  Nevertheless, the court construes the affidavit of Plaintiffs' counsel as a statement of their opposition to the pending motions to dismiss.  Because the merit of the motions to dismiss depends primarily on the allegations of the amended complaint, the court can grant or deny these motions without further input from Plaintiffs.

2.)  As part of their monthly mortgage payment under the Mortgage, Plaintiffs had to include an escrow payment to the lender which was sufficient to pay real estate taxes and insurance on the Property.  (ECF No. 16 at 11 ¶ 49.)  In this regard, Plaintiffs allege that they made escrow payments from May 2006 through September 2011 in accordance with the Mortgage.  (Id. at 12–13 ¶ 59.)

Plaintiffs further allege that they made initial escrow payments to IndyMac Bank, F.S.B., which was the lender and servicer of Plaintiffs' loan from the execution of the Mortgage in 2006 to July 10, 2008.  (ECF No. 16 at 6 ¶ 23, 11 ¶ 46, 14 ¶ 68.)  Plaintiffs allege that beginning July 14, 2008, IndyMac Federal Bank, F.S.B. provided them banking services formerly provided by IndyMac Bank, F.S.B.  (Id. at 15 ¶ 75.)  Thereafter, OneWest became the servicer of Plaintiffs' loan effective March 20, 2009, after OneWest acquired substantially all of the assets and mortgage servicing rights of IndyMac Federal Bank, F.S.B. from the Federal Deposit Insurance Corporation ("FDIC").  (Id. at 15 ¶¶ 77–80, 16 ¶ 85.)

In addition to the requirements placed on Plaintiffs, the Mortgage required the lender to apply Plaintiffs' escrow funds to pay taxes and insurance no later than the time specified by RESPA.  (Id. at 10 ¶ 45, 11 ¶¶ 50-51.)  In this regard, between March 2006 and 2012, Plaintiffs allege that they received Escrow Disclosure Statements indicating that property taxes in the amount of $2,342.04 would be paid in December of each year. (Id. at 3 ¶ 7, 16 ¶ 61; see also ECF No. 16-2.)  However, these taxes were not consistently paid because in August 2010, Plaintiffs allegedly received a delinquent tax notice from the Orangeburg County tax collector informing them that taxes on the Property had not been paid for 2009.[4]  (ECF No. 16 at 3 ¶¶ 4,

---

[4] Plaintiffs claim that their attorney was informed by counsel for Defendants that they had "on certain occasions, issued 'refund' checks to Plaintiffs that Plaintiffs should have used to pay the taxes" on the Property.  (ECF No. 16 at 5 at ¶ 19.)  Plaintiffs assert that Defendants have failed to

6.)  Plaintiffs allege that they repeatedly contacted Defendants to remedy the failure to pay taxes on the Property, but to no avail.  (Id. at 4 ¶¶ 9–11, 16 ¶¶ 62–65.)  Thereafter, in December 2010, the Orangeburg County Treasurer allegedly sold the Property to a third-party at a delinquent tax auction.  (Id. at 10 ¶ 37.)  On July 26, 2011, Plaintiffs allege that they paid the taxes, interest, costs, and penalties necessary to regain title to the Property.  (Id. at 5 ¶ 15, 10 ¶ 39.)

Plaintiffs allege that they made monthly payments under the Mortgage from March 2006 until September 2011, when they were unable to make their mortgage payment.  (ECF No. 16 at 10 ¶ 43, 13 ¶ 60.)  Plaintiffs assert that their inability to make payments on the Mortgage occurred because they experienced a substantial reduction in income.  (Id. at 16 ¶ 88.)  As a result, Plaintiffs allegedly completed an application for a modification of their loan pursuant to the HAMP.[5]  (Id.)  Plaintiffs allege that OneWest ignored and repeatedly denied receiving their HAMP application documents. (Id. at ¶ 89.)  Plaintiffs further allege that OneWest refused to evaluate their HAMP application after receiving it and continued to falsely deny receipt of the application from Plaintiffs.  (Id. at 17 ¶¶ 93–94.)

On December 6, 2013, Plaintiffs commenced this action alleging causes of action against Defendants for violation of RESPA, breach of contract, and a claim for fraud or breach of contract accompanied by a fraudulent act.  (ECF No. 1.)  On February 4, 2014, IMB filed a Rule 12(b)(2) motion and a Rule 12(b)(6) motion and OneWest filed a Rule 12(b)(6) motion as to the complaint.[6]  (ECF Nos. 9, 10.)  In response to the motions to dismiss of IMB and OneWest,

---

produce evidence supporting the assertion that Plaintiffs were advised to use these refund checks to pay the taxes.  (Id. at ¶ 20.)

[5] Plaintiffs allege that OneWest agreed to continue the loan modification programs initiated by the FDIC in agreements executed by the FDIC and OneWest on March 18, 2009.  (ECF No. 16 at 16 ¶ 87, 17 ¶ 91.)  Plaintiffs also allege that on September 24, 2010, OneWest's Vice President and Chief Operating Officer executed a Servicer Participation Agreement ("SPA"), thereby making OneWest a participating servicer in the HAMP.  (Id. at 17 ¶ 92, 16 ¶ 110.)

[6] These motions to dismiss the complaint are currently pending.  The court denies them as moot.

Plaintiffs filed an amended complaint on February 28, 2014.  (ECF No. 16.)  On March 27, 2014,

IMB filed a Rule 12(b)(2) motion and a Rule 12(b)(6) motion and OneWest filed a Rule 12(b)(6)

motion as to the amended complaint.  (ECF Nos. 22, 23.)

## II.     LEGAL STANDARD AND ANALYSIS

A.     <u>Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)</u>

When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2),

plaintiff has "the burden of proving" that jurisdiction exists "by a preponderance of the

evidence."  <u>In re Celotex Corp.</u>, 124 F.3d 619, 628 (4th Cir. 1997).  "[W]hen, as here, a district

court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without

deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather

relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a

prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional

challenge."  <u>Id.</u>; <u>see also</u> <u>New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.</u>, 416 F.3d

290, 294 (4th Cir. 2005) (noting that a plaintiff need only make a prima facie showing of

jurisdiction when the court does not conduct an evidentiary hearing).  In deciding whether

plaintiff has met this burden, the court construes all disputed facts and draws all reasonable

inferences from the proof in favor of jurisdiction.  <u>Carefirst of Md., Inc. v. Carefirst Pregnancy</u>

<u>Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003); <u>Mylan Labs., Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 60

(4th Cir. 1993).  In ruling on a motion to dismiss for lack of personal jurisdiction, the court may

consider evidence outside of the pleadings, such as affidavits and other evidentiary materials,

without converting the motion to dismiss into a motion for summary judgment.  <u>Magic Toyota,</u>

<u>Inc. v. Se. Toyota Distribs., Inc.</u>, 784 F. Supp. 306, 310 (D.S.C. 1992).

A federal court may exercise personal jurisdiction over a defendant in the manner

provided by state law.  Fed. R. Civ. P. 4(k)(1)(A); ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).  "Thus, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment.  Christian Sci. Bd. of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

South Carolina's long arm statute provides as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803 (2005).  "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause."  ESAB Grp., 126 F.3d at 623. Therefore, the appropriate question for the court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice."  Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice.")).

Personal jurisdiction may arise through specific jurisdiction, based on the conduct alleged in the suit, or through general jurisdiction. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). Under general jurisdiction, a defendant's contacts/activities in the forum state are not the basis for the suit, but it may be sued in this court "for any reason, regardless of where the relevant conduct occurred," because its activities in South Carolina are "continuous and systematic." CFA Inst., 551 F.3d at 292 n.15. These activities must be "so substantial and of such a nature as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co., 326 U.S. at 318. General jurisdiction is proper where the defendant has purposefully "availed himself of the privilege of conducting business [in the forum state]." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

Under specific jurisdiction, a defendant may be sued in this court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts should examine "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc., 293 F.3d at 712.

B.    Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli,

588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A defendant can raise a statute of limitations affirmative defense in a motion under Fed. R. Civ. P. 12(b)(6). See El Hadidi v. Intracoastal Land Sales, Inc., Civil Action No. 4:12–cv–00535–RBH, 2013 WL 625575, at *2 (D.S.C. Feb. 20, 2013). A statute of limitations defense must "clearly appear[] on the face of the complaint." Richmond, Fredricksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). In other words, the complaint must clearly "allege all facts necessary to the affirmative defense." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (citing Forst, 4 F.3d at 250).

C.     The Parties' Arguments

1.     *IMB*

IMB moves to dismiss the amended complaint arguing that the court lacks both general and specific personal jurisdiction over it. (ECF No. 22-1 at 16–22.)  In support of this argument, IMB asserts that Plaintiffs have not alleged any facts indicating that IMB has any presence in South Carolina or has purposefully availed itself of the benefit of South Carolina law.  (Id. at 19 ("They do not allege that IMB HoldCo is domiciled in South Carolina, organized under the laws of South Carolina, or maintains its principal place of business in South Carolina . . . do not allege that IMB HoldCo has any contacts with the State of South Carolina, let alone that such contacts are 'continuous and systematic.'").)  IMB further asserts that Plaintiffs have not sufficiently alleged that IMB was involved in the transactions giving rise to their causes of action.  (Id. at 21.)  Finally, IMB asserts that jurisdiction cannot be conferred over it simply as a result of its status as a parent of OneWest.  (Id. at 23–24.)

IMB further argues that even if Plaintiffs could establish jurisdiction, their claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because they have not alleged any plausible claim for violation of RESPA, breach of contract, breach of contract accompanied by a fraudulent act, or fraud against IMB.  (Id. at 25.)  In this regard, IMB asserts that Plaintiffs' contentions that IMB is the servicer of their loan, a party to the Mortgage, and a participant in the FDIC's loan modification program are wholly without factual support.  (Id. at 11–16, 25–26.) IMB further asserts that Plaintiffs have not identified any alleged fraud or fraudulent representation by IMB.  (Id. at 29–33.)  Finally, IMB asserts that Plaintiffs have not provided any basis to pierce the corporate veil such as to confer liability on IMB based on the purported conduct of OneWest.  (Id. at 33–34.)

2.    *OneWest*

OneWest moves to dismiss the amended complaint arguing that Plaintiff's claims for breach of contract, fraud/breach of contract accompanied by fraudulent act, and violation of RESPA are time-barred.  (ECF No. 23-1 at 8–12.)  In support of its argument, OneWest asserts that the applicable statute of limitations for each of these claims is three (3) years.  (Id. (citing, e.g., Wimbley v. Select Portfolio Servicing, Inc., C/A No. 1:08CV939, 2009 WL 2045922, at *4 (M.D.N.C. July 9, 2009) ("Private claims of RESPA violations related to servicing of mortgage loans and administration of escrow accounts are subject to a three-year statute of limitations, which runs 'from the date of the occurrence of the violation.'".) (quoting 12 U.S.C. § 2614); S.C. Code Ann. § 15–3–530(1) (2005) ("Within three years: (1) an action upon a contract, obligation, or liability, express or implied, . . . ."); Glenn v. Bank of Am., C/A No. 6:10-1974-HMH, 2010 WL 3786171, at *2 (D.S.C. Sept. 22, 2010) ("Under South Carolina law, actions for civil conspiracy, fraud, and constructive fraud are subject to a three-year statute of limitations.") (citing S.C. Code Ann. § 15–3–530(5) (2005)))).)  OneWest further asserts that Plaintiffs' claims accrued at the earliest on January 15, 2010, thirty (30) days following the mailing of the tax notice in December 2009, or at the latest in August 2010 when Plaintiffs admit they were made aware of the unpaid taxes.  (Id. at 10–11 (citing, e.g., S.C. Code Ann. § 12-45-180(A) (Supp. 1999) ("When the taxes and assessments or any portion of the taxes and assessments charged against any property . . . for the current fiscal year are not paid before the sixteenth day of January or thirty days after the mailing of tax notices, whichever occurs later, the county auditor shall add a penalty . . . .")).)  Based on the foregoing, OneWest asserts that Plaintiffs were untimely in filing this lawsuit on December 6, 2013, more than three (3) years after the claims accrued.  (Referencing ECF No. 1.)

In addition to contending that Plaintiffs' claims are time-barred, OneWest moves for dismissal asserting that Plaintiffs cannot state a claim for fraud.  In the amended complaint, Plaintiffs allege three "acts of Fraud."  (ECF No. 16 at 23 ¶ 129(a)–(c).)  The first act of fraud alleged by Plaintiffs is that Defendants improperly attempted to justify the non-payment of Plaintiffs' property taxes by claiming the Property had not been appropriately apportioned, despite multiple opportunities to communicate with the Orangeburg County Tax Assessor's Office for clarification.  (Id. at 23 ¶ 129(a).)  Plaintiffs' second purported "act of fraud" is premised on allegations that OneWest purportedly "failed to evaluate" Plaintiffs for a HAMP modification.  (Id. at ¶ 129(b).)  Plaintiffs claim Defendants committed a third "act of fraud" by selling the servicing rights to Plaintiffs' loan, along with a number of other loans, to Ocwen Financial Corporation.  (Id. at ¶ 129(c).)

In moving for dismissal of these fraud claims, OneWest contends that Plaintiffs "impermissibly aggregated their fraud allegations" in violation of Fed. R. Civ. P. 9(b) by not specifically alleging any act of fraud or fraudulent representation on behalf of OneWest.  (ECF No. 23-1 at 12–14.)  Moreover, OneWest asserts that three acts of fraud were not pleaded with requisite particularity and failed to identify any actionable fraudulent representation by OneWest. (Id. at 28.)  Specifically, OneWest argues that the first act fails to state a claim because Plaintiffs did not allege that statements in alleged communications were false or that OneWest knew they were false; the second act fails to state a claim because a private right of action does not exist under the HAMP and even if one did, Plaintiffs neither have standing nor have they asserted facts establishing that OneWest's failure to evaluate them for a modification was fraudulent; and the third act fails to state a claim because the amended complaint alleges that IMB conducted the sale and there are no allegations that the sale was fraudulent.  (Id. at 17–25.)

11

OneWest also asserts that Plaintiffs cannot maintain a cause of action against it for breach of contract accompanied by a fraudulent act because the sole breach alleged of failing to timely pay property taxes is not supported by any allegations that OneWest acted with fraudulent intent or committed a fraudulent act in purportedly failing to pay the property taxes, or that it otherwise fraudulently breached the Mortgage.  (Id. at 15–16.)

D.    The Court's Review

    *1.    Dismissal for Lack of Personal Jurisdiction over IMB*

IMB argues that Plaintiffs have not satisfied their burden to establish that it is subject to personal jurisdiction in this court.  Plaintiffs do not specify whether they seek to establish personal jurisdiction over IMB based on specific or general jurisdiction.  In addition, there are no allegations in the amended complaint that IMB conducted activities in South Carolina or purposefully directed activities towards South Carolina.  Plaintiffs merely allege in the amended complaint that "a federal savings association is considered a citizen of the state of its home office" and IMB is a "California institution[] with their headquarters in Pasadena, California." (ECF No. 16 at 8 ¶ 31.)  Besides this statement, Plaintiffs do not make any other allegations in the amended complaint that relate to the court's jurisdiction over IMB.  Therefore, the court finds that Plaintiffs have not established a prima facie case of the court's general personal jurisdiction over IMB.

As to specific personal jurisdiction, Plaintiffs attempt to connect IMB to the loan transactions at issue in this matter through allegations that IMB became the servicer of Plaintiffs' loan and a party to their Mortgage by (1) executing a Master Purchase Agreement with the FDIC related to the sale of IndyMac Federal Bank's assets in March 2009; (2) signing an agreement promising to continue the FDIC's loan modification program; and (3) being identified as a

holding company for OneWest and a servicer of residential mortgage loans in a consent order issued by the United States Treasury Department's Office of Thrift Supervision ("OTS"). (See ECF No. 16 at 1 ¶ 1, 2 ¶ 3(a), 3 ¶ 5, 6 ¶¶ 25–26, 7 ¶¶ 27–29, 11 ¶ 48.)

In response to Plaintiffs' allegations, IMB asserts that Plaintiffs' allegations in support of jurisdiction "are undermined by the very documents upon which they rely in support." (ECF No. 22-1 at 10.) In support of this assertion, IMB submitted a copy of the Master Purchase Agreement and explained how the document did not transfer Plaintiffs' loan to IMB because it "governed only (1) the overarching details of the sale of IndyMac Federal to OneWest, including such items as the purchase price, record transfer procedures, employment matters, tax matters, and the like; and (2) the details surrounding OneWest's purchase of certain 'Group 1' assets made up of IndyMac Federal's retail bank business, including such items as the bank premises, fixtures, intellectual property, and permits, among others." (Id. at 11 (referencing ECF No. 22-5).) IMB further explained how Plaintiffs' loan was sold and transferred to OneWest pursuant to a Servicing Business Asset Purchase Agreement between OneWest and the FDIC to which IMB was not a party. (Id. (referencing ECF No. 22-6).)

As to the consent order issued by OTS, IMB showed that the language in the document clearly conveys that OneWest, not IMB, services residential mortgage loans and IMB only maintains oversight of OneWest's mortgage loan servicing activities. (Id. at 13–14 (citing In the Matter of IMB HoldCo LLC, OTS Docket No. H4585, Order No. WN-11-012, at *1 (OTS Apr. 13, 2011) ("WHEREAS, with respect to the residential mortgage loans it services, the Association [OneWest] initiates and handles foreclosure proceedings and loss mitigation activities involving nonperforming residential mortgage loans, . . . .")).) Moreover, IMB pointed out how the Master Purchase Agreement does not reference the FDIC's loan modification

program and clarified that it is the Servicing Business Asset Purchase Agreement between OneWest and the FDIC which contains the purported "promise to continue" the FDIC's modification program. (Id. at 15 (citing ECF No. 22-6 at 45 § 10.12) ("The Purchaser [OneWest] shall complete the processing of all Mortgage Loan modifications in process pursuant to the Program as of the Closing Date and will honor all offers of modifications for which processing has not yet commenced in accordance with the terms of the Program. In addition, the Purchaser agrees that it will comply with the Program for so long as any financing provided by the Seller in connection with the purchase of the Servicing Rights remains outstanding. The Purchaser agrees that it will comply with the Program as it may be amended by the FDIC from time to time, . . . .").)

Based on the aforementioned record, the court finds that Plaintiffs cannot establish a prima facie case of personal jurisdiction over IMB. Accordingly, the court grants IMB's Rule 12(b)(2) motion to dismiss the amended complaint.[7]

         2.     *Dismissal Pursuant to the Statute of Limitations*

OneWest moves for dismissal of Plaintiffs' claims arguing that these claims are barred by the three (3) year statute of limitations applicable to such claims. (ECF No. 23-1 at 8–12.)

"Private claims of RESPA violations related to servicing of mortgage loans and administration of escrow accounts are subject to a three-year statute of limitations, which runs 'from the date of the occurrence of the violation.'" Wimbley v. Select Portfolio Servicing, Inc., No. 1:08CV939, 2009 WL 2045922, at *4 (M.D.N.C. July 9, 2009) (quoting 12 U.S.C. § 2614)

---

[7] Because the court finds that the amended complaint must be dismissed as against IMB pursuant to Rule 12(b)(2), the court does not address whether the amended complaint could also be dismissed as against IMB under Rule 12(b)(6). See, e.g., Salley v. Heartland-Charleston of Hanahan, SC, LLC, Civil No. 2:10–cv–00791, 2010 WL 5136211, at *5 n.2 (Dec. 10, 2010) ("Furthermore, this motion could likely have been decided on 12(b)(6) grounds, but since personal jurisdiction is lacking, the court is not required to address those arguments.")

("Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, . . . .").  An action for breach of contract, fraud, or breach of contract accompanied by a fraudulent act must also be commenced within three (3) years.  S.C. Code Ann. § 15-3-530(1), (7) (2005).  However, the statute of limitations in South Carolina as to these claims may be extended by the discovery rule.  <u>Prince v. Liberty Life Ins. Co.</u>, 700 S.E.2d 280, 282 (S.C. Ct. App. 2010).  "Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence."  <u>Maher v. Tietex Corp.</u>, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998).  As to a cause of action based on fraudulent conduct, the statute of limitations "does not begin to run until discovery of the fraud itself or of 'such facts as would have led to the knowledge thereof, if pursued with reasonable diligence.'"  <u>Burgess v. The Am. Cancer Soc'y</u>, 386 S.E.2d 798, 799 (S.C. Ct. App. 1989) (quoting <u>Grayson v. Fidelity Life Ins. Co. of Phila.</u>, 103 S.E. 477, 478 (S.C. 1920)).  "The exercise of reasonable diligence" means that "an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist."  <u>Snell v. Columbia Gun Exchange, Inc.</u>, 278 S.E.2d 333, 334 (S.C. 1981).

In determining when Plaintiffs knew or reasonably should have learned of facts that would have given them an indication of OneWest's alleged breach of its responsibility under the

Mortgage or RESPA[8], the court notes that the amended complaint alleges that "[t]he events resulting in this lawsuit began in August 2010, when Plaintiffs received a delinquent tax notice from the Orangeburg County tax collector."  (ECF No. 16 at 3 ¶ 4.)  Upon review of this allegation, the court is persuaded that "a person of common knowledge and experience" would perceive that he had been injured after receiving a delinquent tax notice when he possessed knowledge that his lender was supposed to pay property taxes.  Therefore, the court concludes that Plaintiffs' claims for breach of contract and violation of RESPA accrued in August 2010 when they had notice that OneWest had breached the Mortgage by failing to pay taxes on the Property out of funds in escrow.  As a result, the claims for breach of contract and violation of RESPA regarding the failure to pay property taxes is barred by the three (3) year statute of limitations because Plaintiffs did not file this lawsuit until December 6, 2013, or more than three (3) years after the accrual of the claims.

The court also finds that the claim of fraud related to communications that the Property was not apportioned correctly is also barred by the three (3) year statute of limitations.  As alleged in the amended complaint, Plaintiffs were first put on notice of suspect fraudulent conduct on September 3, 2010, when they received a letter stating "that Plaintiffs' concern had been fully investigated and that it was trying to get 'information on your parcels as we are showing that we are unable to determine the correct parcels due to the listing.'"  (ECF No. 16 at 3 ¶ 8.)  Because Plaintiffs in September 2010 were already in possession of the delinquent tax

---

[8] Plaintiffs allege that Defendants violated RESPA when they "deliberately refused to make timely payments of Plaintiffs' property taxes" causing Plaintiffs to suffer damage.  (ECF No. 16 at 21 ¶¶ 120–121; see also 22 ¶¶ 123–125.)  Section 2605(g) of RESPA requires that "[i]f the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due."  12 U.S.C. § 2605(g).

notice, the court is convinced that "a person of common knowledge and experience" would perceive that he had been injured after receiving the September 3, 2010 correspondence. Therefore, any claim for fraud or fraudulent conduct regarding the September 3, 2010 correspondence and any related correspondence[9] is barred by the three (3) year statute of limitations because Plaintiffs did not file this lawsuit until December 6, 2013, or more than three (3) years after the accrual of the claim.

3.  *Dismissal Because the HAMP Does Not Create a Claim*

The HAMP provides financial incentives to participating mortgage servicers to modify the terms of eligible loans and aims to financially assist homeowners who have defaulted on their mortgages or who are in imminent risk of default.  See Marks v. Bank of Am., N.A., No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5–6 (D. Ariz. June 22, 2010) (describing the HAMP).  However, "nowhere in the HAMP Guidelines, nor in the [legislation authorizing creation of the HAMP], does it expressly provide for a private right of action.  Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac."  Id. at *6; see also Hoffman v. Bank of Am., N.A., No. C. 10-2171 SI., 2010 WL 2635773, at *5 (N.D. Cal. June 20, 2010); Gonzalez v. First Franklin Loan Servs., No. 1:09-cv-941, 2010 WL 144862, at *18 (E.D. Cal. Jan.11, 2010).  Neither does the HAMP create a property interest in permanent modification for borrowers.  See, e.g., Williams v. Geithner, No. 09-1959, 2009 WL 3757380, at *6 (D. Minn. Nov. 9, 2009) (determining that the HAMP regulations "did not intend to create a property interest in loan modifications for mortgages in default," and thus finding no likelihood of success on the merits of plaintiffs' due process claim).

_____

[9] OneWest sent a second letter to Plaintiffs on May 20, 2011 to confirm that "your property is still has not apportioned yet . . . [and y]ou will be notified by the taxing authority when your property has been apportioned . . . [o]nce you have been notified, please forward this information to us so that we may update our records and verify if any property due."  (ECF No. 16 at 4 ¶ 11 (citing ECF No. 16-4).)

In this action, Plaintiffs attempt to assert a claim for fraud or breach of contract accompanied by a fraudulent act by alleging that Defendants failed "to evaluate Plaintiffs' application for a modification of their mortgage loan" pursuant to the HAMP and by refusing "to determine whether Plaintiffs were qualified for a HAMP modification. (ECF No. 16 at 23 ¶ 129(b).)  In analyzing the HAMP, courts have consistently found that the "denial of a loan modification under HAMP [or other similar program] does not create a private cause of action." Weber v. Bank of Am. NA, C/A No. 0:13-cv-01999-JFA, 2013 WL 4820446, at *4 (D.S.C. Sept. 10, 2013); Steffens v. Am. Home Mortg. Servicing, Inc., C/A No. 6:10-1788-JMC, 2011 WL 901179, at *3 (D.S.C. Mar. 15, 2011); Dugger v. Bank of Am., No. 1:10CV00076, 2010 WL 3258383, at *2 (E.D. Mo. Aug. 16, 2010) (dismissing claims under Rule 12(b)(6) and stating that "neither EESA, TARP, nor HAMP provides a private right of action to individual borrowers"); Zeller v. Aurora Loan Servs., LLC, No. 3:10cv00044, 2010 WL 3219134, at *1 (W.D. Va. Aug. 10, 2010) (stating that Congress did not permit a private cause of action under HAMP); Marks v. Bank of Am., N.A., No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5–7 (D. Ariz. June 22, 2010) (holding that the HAMP Guidelines and EESA do not provide a private cause of action).

In consideration of the foregoing law, the court is constrained to find that the allegations in the amended complaint are insufficient to establish claims for either fraud or breach of contract accompanied by a fraudulent act based on Defendants' alleged violation of the HAMP.

4.    *Dismissal for Failure to State a Claim*

The only remaining allegation of fraudulent conduct is based on an assertion by Plaintiffs that Defendants committed fraud by selling the servicing rights to Plaintiffs' loan to Ocwen Financial Corporation.  (ECF No. 16 at 23 ¶ 129(c).)  In the amended complaint, the only

allegations regarding this fraudulent conduct are as follows:

> (1) "Not only did Defendants refuse to evaluate Plaintiffs' applications for a modification, IMB HoldCo sold the right to service Plaintiffs' loan together with those of certain others valued at $78 billion for a price of $2.5 billion to Ocwen Financial Corporation, taking advantage of provisions of a loss share agreement and thereby making it impossible for Plaintiffs to secure a modification of their loan.  Plaintiff[s] believe that this sale of servicing rights constituted another fraudulent act."  (ECF No. 16 at 2 ¶ 3(a).)

> (2) "Defendants committed deliberate acts of Fraud when they: (c) Sold the right to service Plaintiffs' loan together with those of certain others valued at $78 billion for a price of $2.5 billion to Ocwen Financial Corporation, thereby making it impossible for Plaintiffs to secure a modification of their loan."  (ECF No. 16 at 23 ¶ 129(c).)

OneWest asserts that dismissal is warranted because these allegations of fraudulent conduct fail to satisfy the heightened pleading standard that requires the allegation of fraud be stated with particularity pursuant to Fed. R. Civ. P. 9(b).  (ECF No. 23-1 at 14.)

When a plaintiff alleges fraud[10], courts must apply a heightened pleading standard to those claims.  Fed. R. Civ. P. 9(b).  Rule 9(b) requires that, when "alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  Id.  The heightened pleading standard contained in Rule 9(b) requires plaintiffs to plead with particularity "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

Upon review, the court finds that Plaintiffs' allegations of fraud regarding the sale of the

---

[10] In order to recover in an action for fraud, the following elements must be shown by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.  M.B. Kahn Constr. Co., Inc. v. S.C. Nat'l Bank of Charleston, 271 S.E.2d 414, 414 (S.C. 1980); Ardis v. Cox, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993).

servicing rights for their loan fail to satisfy their burden under Fed. R. Civ. P. 9(b).  Therefore, Plaintiffs' claim of fraud or breach of contract accompanied by a fraudulent act as to the sale of the servicing rights for their loan must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III.   CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** Defendant IMB HoldCo, LLC's motion to dismiss the amended complaint for lack of personal jurisdiction and **DENIES AS MOOT** its motion to dismiss for failure to state a claim.  (ECF No. 22.)  The court further **GRANTS** the motion to dismiss the amended complaint for failure to state a claim of Defendant OneWest Bank, FSB.  (ECF No. 23.)  The court also **DISMISSES** the action against Defendant Steven T. Mnuchin without prejudice pursuant to Fed. R. Civ. P. 4(m).  The remaining pending motions to dismiss are **DENIED AS MOOT**.  (ECF Nos. 9, 10.)  The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 27, 2014
Columbia, South Carolina